**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **JUNIPER NETWORKS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:09cv287 GBL/TRJ** |
| ) | |
| **GRAPHON CORPORATION and** ) | |
| **VERTICAL MARKETING, INC.,** ) | |
| ) | |
| **Defendants,** ) | |

**GRAPHON CORPORATION'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**
**AND/OR MOTION TO AMEND THE JOINT DISCOVERY PLAN**

GraphOn anticipates that Juniper is going to complain loud and long about what it perceives to be late and unsatisfactory production of the technical documents contained in GraphOn's source code repository. The problem is that Juniper has been complaining so loudly that it has not heard what GraphOn has been saying with respect to the problems producing the documents as Juniper has demanded.

Juniper has received complete production of the source code repository documents and has had this production since June of 2009. The only issue that exists with respect to the source code repository documents is the appropriate format in which the documents need to be produced. Juniper is insistent that GraphOn produce the documents as per the parties' discovery plan and as they were maintained by GraphOn. GraphOn has explained repeatedly and in great detail to Juniper that the source repository documents cannot be produced as they are maintained in the ordinary course of business

and in TIFF format as per the parties' discovery plan. It is a practical impossibility because of the nature of the source code repository documents. Yet, Juniper still insists that the documents be produced in TIFF format, in spite of the complications and in spite of the fact that Juniper has everything it needs from GraphOn.

To further compound the situation, Juniper recently indicated that it will renew its motion to compel and seek sanctions against GraphOn for its failure to produce the documents in this impractical manner. Because of the threatened motion and sanctions and further because of the inherent complications in attempting to produce the documents in a manner that is not reasonably practicable, GraphOn is seeking a protective order from this Court and an amendment to the parties' discovery plan to allow a different manner of production.

## BACKGROUND FACTS

Many of the underlying facts leading up to the current production problem were described in detail in GraphOn's Opposition to Motion to Compel (Doc. #90), filed on August 7, 2009. Those facts are incorporated herein by reference. As explained in GraphOn's Opposition to Juniper's Motion to Compel, GraphOn originally produced the source code repository documents in June of 2009. Juniper then demanded the specific production of the source code repository documents in TIFF format in July and GraphOn gave Juniper the option of having the documents produced in native format. Juniper rejected this option and demanded that all of the documents in the source code repository be

produced as soon as possible and be produced in TIFF format, and Bates-numbered, as provided in the parties' discovery plan.[1]

The documents were produced and mailed on or about August 6, 2009, to Juniper by GraphOn's technical consultant, Elysium.[2] *Exhibit A, Schwartzberg Decl., ¶ 10.* The production consisted of 35,666 documents and 231,158 images complete with TIFF images, Optical Character Recognition ("OCR") text production, and a Concordance load file as per the parties' discovery plan. *Id., ¶ 10.*

After receiving the source code repository production, Juniper complained that it was having difficulty reviewing certain documents. *E-mail from Sigler dated August 17, 2009, attached hereto as Exhibit "B" and incorporated herein by reference.* Juniper requested GraphOn produce a new set of image files for all of the documents in the production and fix a dating problem on the documents. *Id.*

After counsel spoke on the phone regarding this problem, Juniper agreed to have GraphOn make a copy of what GraphOn had received from Elysium since GraphOn's copy did not appear to have any problems. *Declaration of Melissa P. Barnard attached hereto as Exhibit "C" and incorporated herein by reference.* However, Juniper again had problems viewing certain documents in this second production. *E-mail from Sigler to Barnard, dated*

---

[1] The parties' discovery plan states in Paragraph G, that "*To the extent reasonably practicable, all documents should be produced as Group IV TIFF images at 300 dpi named the same as the Bates number.*" (Doc. #53, ¶ G) (emphasis added).

[2] GraphOn's vendor is Elysium Digital, L.L.C. ("Elysium"), a technology litigation consulting firm located in Cambridge, Massachusetts. *Declaration of Steven G. Schwartzberg, ¶ 2, attached hereto as Exhibit "A" and incorporated herein by reference.* Elysium provides services relating to information technology, computer forensics, and computer science for lawyers and parties to legal disputes. *Exhibit A, Schwartzberg Decl., ¶ 3.* Its clients have included the United States Department of Justice and prominent law firms in Boston and across the United States. *Id.* In addition, Elysium consultants serve as court-appointed experts to help courts address issues relating to electronic discovery, computer forensics, and computer science. *Id.*

*August 20, 2009, attached hereto as Exhibit "D" and incorporated herein by reference.* Juniper gave GraphOn two (2) business days to rectify the problems. *Id.*

On August 21, 2009, counsel for each party conducted a conference call, where Juniper's counsel explained more specifically that Juniper was having difficulty viewing documents that have both text and images on them as the images on the documents were not viewable. *Exhibit C, Barnard Decl., ¶ 14.* GraphOn's technical consultants investigated these claimed problems, and determined that the production was correct for the format that was requested by Juniper. *Exhibit A, Schwartzberg Decl., ¶ 11.*

At that point, GraphOn suggested that the technical consultants for each party participate in a conference call with the attorneys to discuss the problems Juniper was having viewing the documents *Exhibit C, Barnard Decl., ¶ 15.* This conference call was held on August 24, 2009. *Exhibit A, Schwartzberg Decl., ¶ 12; Exhibit C, Barnard Decl., ¶ 15.* GraphOn's consultant, Steve Schwartzberg, explained to Juniper that the perceived issue in the production was due to the fact that only the text documents were extracted from the source code repositories. *Exhibit A, Schwartzberg Decl., ¶ 12.* Other items were not extracted, such as HTML format, which references by name various other files including images and JavaScript code (small programs that run within a web browser) because they were not documentation. *Id.* Graphics are not documents and so a decision was made at that time not to extract them. Additionally, Mr. Schwartzberg explained that due to the nature of source code repositories, while there can be many versions of each of the text document and any included image files, there is no method of matching the images and text up in a way that guarantees accuracy. *Id.*

Juniper's technical person agreed with Mr. Schwartzberg's explanation of the problem experienced by Juniper and Juniper's counsel appeared to accept the explanation as well. *Exhibit C, Barnard Decl., ¶16.* In fact, Mr. Sigler concluded the conference by stating that if he had any further issues or questions, he would get back to GraphOn. *Id.*

On August 28, 2009, Mr. Sigler made good on his promise and sent a follow-up letter enumerating four problems with GraphOn's source code repository production. *Letter from Sigler, dated August 28, 2009, attached hereto as Exhibit "E" and incorporated herein by reference (Exhibit A to letter omitted due to size).* Many of these alleged problems had been previously explained to Juniper by GraphOn, but Juniper inexplicably felt compelled to raise them again. Specifically, Juniper complained about the lack of images in certain documents, the dates on the documents containing the "last update" date not the creation date, the textual data not being displayed in certain documents and additional documents that Juniper already had in its possession from the computers at Troutman Sanders, but wanted produced in TIFF format. *Id.*[3]

While GraphOn was in the process of preparing a response to Mr. Sigler's letter, the parties conducted a meet and confer on another matter and requested this issue be discussed as well. *Exhibit C, Barnard Decl., ¶17.* During the conference call held on September 3, 2009, GraphOn's counsel again reiterated GraphOn's earlier explanations that Juniper's problem was not the production of the documents, but the type of production format that Juniper insisted on, namely TIFF format. *Id.* To solve the problem, GraphOn offered to produce the documents in native format, which was how they were maintained by GraphOn. Juniper agreed that GraphOn could produce the documents in a non-TIFF, non-Bates

---

[3] Juniper admitted that most of these issues had been previously discussed by the parties, but not resolved. However, the resolution of these issues could not be reached without Juniper recognizing the inherent problems with producing certain documents in TIFF format.

format, provided that GraphOn gave a reasonable or solid deadline as to when this production would occur.[4]  Juniper later clarified that this production was just a temporary solution, and it still wanted the documents produced in compliance with the parties' discovery plan in TIFF format with Bates numbers.  *E-mail from Kevin Jakel dated September 4, 2009, attached hereto as Exhibit "G" and incorporated herein by reference.*

After the conference call, GraphOn specifically addressed the four concerns raised by Juniper in the August 28, 2009 letter with a letter of its own.  *See, Letter from Melissa Barnard dated September 3, 2009, attached hereto as Exhibit "H" and incorporated herein by reference.*  With respect to the lack of images and textual data issues, GraphOn explained that the problems described by Juniper stem from the requirement to produce in TIFF format.  *Id.*  The documents were maintained as a set of files containing graphics, HTML, and JavaScript source code. *Id.*  More specifically, "These files are assembled, executed, and rendered by a web browser into a viewable document...... it is impossible to completely and accurately render these documents in TIFF format without the use of a web browser." *Id.*

GraphOn also explained that the issue with "last updates" is a by-product of how a CVS repository works because a CVS file is a program designed to track every modification and therefore show every change, modification or access to a document.  *Id.*  A CVS repository is not meant to track forensic information or to preserve an original

---

[4] GraphOn complied with this request by e-mail on September 4, 2009.  *See, E-mail from Melissa Barnard dated September 4, 2009, attached hereto as Exhibit "F" and incorporated herein by reference.*

creation or modification date and instead, it is a database that contains all sorts of information, including information concerning every time a document is accessed. *Id.*[5]

In a good faith effort to address the problems in Juniper's latest letter, a hard drive with the complete source code production, including all documents in their native form, was provided to Juniper on September 4, 2009. *Exhibit A, Schwartzberg Decl.,¶ 15.* Even though it had been made abundantly clear that TIFF production was not reasonably practicable, Juniper still complained because the documents were not produced in TIFF format. Juniper demanded that the documents be produced in compliance with the discovery plan in TIFF format with Bates numbers. *Exhibit F, Jakel E-mail, dated September 4, 2009.*

On September 8, 2009, another meet and confer conference call was held between counsel for Juniper, counsel for GraphOn, a technical representative from Juniper and GraphOn's technical consultant. *Exhibit A, Schwartzberg Decl.,¶ 15; Exhibit C, Barnard Decl., ¶ 19.* The four issues in Mr. Sigler's letter were again addressed, but this time with the input of the technical people and not just the attorneys. GraphOn explained again as it had during the conference call on August 24, 2009, that not all items were extracted from the source code repositories because many of the items were not documentation and producing these images in TIFF format is problematic. *Id.*

---

[5] GraphOn also addressed Juniper's complaint that there were additional files on the source code computers at Troutman Sanders that were not produced with the other source repository documents. *Exhibit H, Barnard Letter of September 3, 2009.* GraphOn explained that these documents were not part of the source code repository, but in fact were part of a binary production that Juniper requested after the source code was produced, so they would not have been included in the source repository production. *Id.* However, GraphOn agreed to produce these documents in native format to avoid the same problems with the source repository documents. *Id.*

The parties eventually agreed that GraphOn would produce the latest versions of the documents with graphics. To further assist Juniper, the parties also agreed that GraphOn would make some additional productions including the head files and most recent revision of all the documents in TIFF format versions to resolve the "last updated" problem. *Barnard Decl., ¶19. Id.* Again, Juniper expressed that the issues were explained to their satisfaction. *Schwartzberg Decl., ¶16.* Juniper also agreed to allow GraphOn to submit a proposal to Juniper on how to make a final production of the documents in a satisfactory manner. *Id.* GraphOn submitted this proposal on September 9, 2009, with a deadline of September 10, 2009. *Letter from Melissa Barnard to Kevin Jakel, dated September 9, 2009, attached hereto as Exhibit "J" and incorporated herein by reference.* Juniper never responded to the proposal.

## CURRENT DISPUTE

There are three issues with Juniper's demands for production. First, Juniper continues to request documents be "produced to Juniper as they are maintained by GraphOn" as they desire "a complete production". However Juniper demands that GraphOn produce the documents as per the parties' discovery plan. **GraphOn does not maintain their documents in TIFF format and therefore cannot produce the documents both as they are maintained in the ordinary course of business and in TIFF format as per the parties' discovery plan.** *Exhibit A, Schwartzberg Decl.,¶ 17(a) (emphasis added).*

Second, some of GraphOn's files are assembled, executed, and rendered by a web browser into a viewable document and it is impossible to completely and accurately render these documents in TIFF format without the use of a web browser. *Exhibit G,*

*Barnard Letter dated September 3, 2009.*  Pages that contain interactive or animated content cannot be provided in TIFF format much like the way that a movie cannot be effectively reproduced as still images.  *Exhibit A, Schwartzberg Decl., ¶ 17(b).*  Juniper either doesn't understand this or ignores the problem.

Finally, due to the nature of how source code repositories work, while all the files are kept along with all revisions ever made to them, documents that refer to other files, such as HTML, do not specify which version of the file they require.  *Exhibit A, Schwartzberg Decl., ¶ 17(c).*  Therefore it is not possible to tell which versions of which files link together to form the entire rendered document as it existed at any given point in time.  *Id.*  In short, it is impracticable to produce the documents in TIFF format.

GraphOn has attempted to work with Juniper on the source repository production issue since it was first raised by Juniper.  To that end, GraphOn has proposed, offered and undertaken numerous alternatives for production of the documents not only in a way that is satisfactory to Juniper, but in a way that maintains the integrity of the documents as they originally were kept by GraphOn.  Specifically, GraphOn has offered the following solutions or resolutions to Juniper:  Production in native format, allow Juniper to convert the documents to TIFF at GraphOn's expense; have the respective technical consultants meet and confer; ship the documents in native format with source code; ship the documents in native format without source code; and have the technical consultants work together to devise a way to produce the documents in TIFF format.[6]  *E-mails of 9/3/2009 and 9/4/2009, attached hereto as Exhibit "I" and incorporated herein by reference; Exhibit J, Barnard*

---

[6] The suggestion of having Juniper convert the documents to TIFF was made because Juniper's counsel asserted that their technical people convert these type of documents to TIFF format all the time.  During the last meet and confer conference call, when GraphOn specifically asked Juniper if and how they convert these types of documents to TIFF, GraphOn received no direct response.  *Exhibit C, Barnard Decl., p. _____.*

*letter dated September 9, 2009.* GraphOn even submitted a proposal to Juniper, after running this idea past Juniper during the last meet and confer conference call, to provide all the various ways that GraphOn could and would produce the source code repository documents to Juniper so that Juniper could have all of the source code repository documents at their disposal and as they are maintained by GraphOn. *Exhibit J, Barnard letter dated September 9, 2009.* Juniper never responded to the proposal, leaving GraphOn in the position of being forced to produce documents in a format that would not provide an accurate or complete production also as demanded by Juniper.

To compound GraphOn's untenable position, Juniper's counsel began threatening to renew its motion to compel and additionally seek sanctions against GraphOn because GraphOn could not produce the documents in the manner demanded by Juniper. *See, E-mail from Coke Stewart, dated September 9, 2009, attached hereto as Exhibit "K"; Exhibit G, Jakel E-mail, dated September 4, 2009.* It is these threats by Juniper, as well as Juniper's refusal to work with GraphOn to find a practical approach to production of these documents, which has prompted the current Motion for Protective Order.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 26(c), "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). The motion may be brought for the purposes of prescribing a discovery method other than the one selected by the party seeking discovery. Fed.R.Civ.P. 26(c)(1)(D).[7] A motion for protective order is

---

[7] Additionally, the party moving for a protective order must certify that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Fed.R.Civ.P. 26(c). GraphOn certifies that the counsel for

a suggested tool in an electronic discovery dispute.  *See,* Cappetta *v. GC Services Ltd. Partnership,* 2009 WL 482439, 2 -3 (E.D.Va. 2009).

A party seeking a protective order under Rule 26(c) must make a particularized showing of good cause which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *See In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998); *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C. 1981).

The facts and events enumerated in this Motion demonstrate that GraphOn has good cause for a protective order.  First, the parties' discovery plan allows the parties to deviate from production in TIFF format where it is not reasonably practicable to produce the documents in that manner.  *See, Doc. #53, ¶ G.*  After several attempts at producing the source code repository documents pursuant to the terms of the parties' discovery plan, it has become clear, that production in TIFF format is not feasible for these documents, nor is it feasible for documents contained in GraphOn's other databases. GraphOn has explained, and Juniper's consultant has not disagreed, that the documents in the source code repository could not be accurately or completely reproduced in TIFF format, particularly where the documents had HTML, javascript or other graphic images. GraphOn also has explained that due to the nature of how source code repositories work, while all the files are kept along with all revisions ever made to them, documents that refer to other files, such as HTML, do not specify which version of the file they require. *Exhibit A, Schwartzberg Decl.,¶ 17(c).*   Therefore it is not possible to tell which versions of which files link together to form the entire rendered document as it existed at any

GraphOn conferred or attempted to confer with Juniper to resolve the dispute without seeking court intervention.  *See, Exhibit C, Barnard Decl. ¶12.*

given point in time.   *Id.*  In short, it is impracticable to produce the documents in TIFF format.

Producing the documents in native format would solve the specific problems Juniper complains of, such as documents missing images, documents having the "last updated" date instead of the creation date, documents missing textual data. *See, Exhibit A, Schwartzberg Decl.*  Contrary to Juniper's portrayal of GraphOn's production as a "fiasco", this has been a technical problem that required more than counsel's review of the issue.  *See, Exhibit I, Stewart E-mail.*   In fact, GraphOn has repeatedly offered to produce the documents to Juniper in the more appropriate native format, but Juniper has steadfastly refused, insisting on putting form over function and following the parties' discovery plan.  Had Juniper accepted production in native format in late July, it would have had all the documents for review, making its claims of delay even more frivolous.

Furthermore, while Juniper will attempt to paint a picture of ineptitude or bad faith by GraphOn in producing these documents, the facts simply do not support this accusation.  Although the documents were originally produced in electronic form with the source code, Juniper did not request production of the source code repository documents in an alternative format until late July.  *Exhibit C, Barnard Decl.*   GraphOn complied with this request, specifically producing the documents in TIFF format, as demanded by Juniper.  Both parties spent the next few weeks attempting to figure out what Juniper's specific complaints were with the production and what production method would best resolve the problem.  *Exhibit C, Barnard Decl.*   The conclusion was reached by GraphOn's consultants that TIFF format was the problem and that the only way to produce the documents as maintained by GraphOn was in native format.

Finally, in furtherance of this resolution process, GraphOn offered several production alternatives to solve the TIFF production problem, including, production in native format, conversion of the documents to TIFF by Juniper with GraphOn paying for the conversion, having the respective technical consultants meet and confer, shipping the documents in native format with source code, shipping the documents in native format without source code and having the technical consultants work together to devise a way to produce the documents in TIFF format. *Exhibit A, Schwartzberg Decl.; Exhibit C, Barnard Decl.* GraphOn's proposals maintained the integrity of the original documents as they were kept by GraphOn which underscores one of he purposes behind the discovery rules. The fact that Juniper's counsel has portrayed GraphOn's numerous attempts at resolution as "bizarre" and a "fiasco" is indicative of Juniper's unwillingness to work toward a resolution without seeking court intervention. *See, Exhibit I, Stewart E-mail.*

In fact, it is this unwillingness to work together to find a practicable solution and the continual threats of sanctions that prompted GraphOn's Motion for Protective Order. GraphOn has been put in an impossible situation: Produce documents in a format that both parties now know does not work and get dragged into court for their inherent production problems, or produce in a more practical manner which allows Juniper to review the documents and be brought into court for failing to adhere to the parties' discovery plan.

The parties' current discovery plan provides that "*To the extent reasonably practicable,* all documents should be produced as Group IV TIFF images at 300 dpi named the same as the Bates number." (Doc. #53, ¶ G). Rule 26(c) allows the court to issue a protective order to prescribe a discovery method other than the one selected by the party seeking discovery. Fed.R.Civ.P. 26(c)(1)(D). Clearly, the current production method

calls for production in a format that is not reasonably practicable.  Therefore, GraphOn requests that the court enter an order amending the parties' discovery plan, specifically Paragraph G, to allow production of the documents in the source code repository and in GraphOn's other databases to be made in native format.

## CONCLUSION

For these reasons and for good cause shown, GraphOn respectfully requests that the Court issue a protective order allowing production of the source code repository documents as well as documents in other databases to be made in a format other than the one described in the parties' discovery plan.  Specifically, GraphOn wants to produce the source code repository documents as well as documents in other databases in native format, so that the production is complete, accurate and conforms to the manner in which GraphOn has maintained the documents.

Dated:  September 11, 2009.

Respectfully submitted,

<u>          /s/ - Joshua Heslinga        </u>
Dabney J. Carr (VSB No. 28679)
  dabney.carr@troutmansanders.com
Robert A. Angle (VSB No. 37691)
  robert.angle@troutmansanders.com
Joshua D. Heslinga, (VSB No. 73036)
  joshua.heslinga@troutmansanders.com
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia
Tel: (804) 697-1200
Fax: (804) 698-5124
Email: robert.angle@troutmansanders.com

Joseph M. Vanek *(admitted pro hac vice)*

Jeffrey R. Moran *(admitted pro hac vice)*
VANEK, VICKERS & MASINI, PC
111 S. Wacker Drive, Suite 4050
Chicago, Illinois 60606
Tel: (312) 224-1500
Fax: (312) 224-1510
Email: jvanek@vaneklaw.com
Email:jmoran@vanekelaw.com

Michael D. Rounds *(admitted pro hac vice)*
Melissa P. Barnard *(admitted pro hac vice)*
Eliza Bechtold *(admitted pro hac vice)*
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada 89511
Tel: (775) 324-4100
Fax: (775) 333-8171
Email: mrounds@watsonrounds.com
Email: mbarnard@watsonrounds.com
Email: ebechtold@watsonrounds.com

*Attorneys for Defendants*
*GRAPHON CORPORATION, INC. and*
*VERTICAL MARKETING, INC.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 11th day of September 2009, I electronically filed the

foregoing motion with the Clerk of the Court using the CM/ECF system, which then will

send automatic notification of such filing (NEF) to the following:

Alan M. Fisch, Esquire
   afisch@kayescholer.com
Jason F. Hoffman, Esquire
   jahoffman@kayescholer.com
Coke Morgan Stewart, Esquire
   cstewart@kayescholer.com
Roy William Sigler, Esquire
   bsigler@kayescholer.com
Kevin W. Jakel, Esquire
   kjakel@kayescholer.com
KAYE SCHOLER LLP
901 15th Street, NW
Washington, DC 20005
202-682-3500
   *Counsel for Juniper Networks, Inc.*

                    /s/
Joshua D. Heslinga, VSB #73036
   joshua.heslinga@troutmansanders.com
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  804-697-1200
Facsimile:  804-697-1339

*Counsel for GraphOn Corporation*

1866391v1