IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JUNIPER NETWORKS, INC., <br>             Plaintiff, <br>    v. <br> GRAPHON CORPORATION and <br> VERTICAL MARKETING, INC., <br>             Defendants. | Civil Case No. 1:09cv287 GBL/TRJ |

**JUNIPER NETWORKS, INC.'S OPPOSITION TO
GRAPHON CORPORATION'S MOTION FOR PROTECTIVE ORDER AND/OR
MOTION TO AMEND THE JOINT DISCOVERY PLAN**

Counsel for Juniper has never encountered a document production as fraught with errors and problems as GraphOn's document production in this case. As the Court may recall, after Juniper issued its requests for the production of technical documents on May 18, 2009, GraphOn essentially denied that it had any. (It produced about 30 pages of documents.) Subsequently, Juniper's technical consultant inadvertently discovered thousands of relevant technical documents while reviewing GraphOn's source code on the secured computers at GraphOn's counsel's office. When Juniper called this to GraphOn's attention, GraphOn claimed that the documents had been "produced" when the source code was produced, even though neither counsel for Juniper (nor counsel for GraphOn) even knew they were there.

Counsel for Juniper asked GraphOn to produce the documents to Juniper in accordance with the agreed-to and Court-ordered discovery plan. After some delay, GraphOn agreed. When GraphOn prepared to produce the documents, however, it unilaterally decided to produce the textual portion of the documents and not any embedded images (*i.e.*, graphs, charts, pictures, drawings). Without the images in the documents, they were nonsensical. Juniper called this problem to GraphOn's attention, but GraphOn denied that the images were missing, causing more delay. Then GraphOn produced the documents again. Still, the images were missing.

Finally, over two months after its technical document production was due, GraphOn simply copied everything on the source code computers (including the source code) and delivered it to counsel for Juniper. The problem then was that none of the documents, consisting of more than 200,000 pages of material, could be loaded onto Juniper's document management system because they did not have Bates numbers or associated TIFF files (similar to a PDF).

As is common practice, each side agreed to bear the expense of producing documents with Bates numbers and TIFF files. Juniper complied with its end of the bargain on this point, but GraphOn did not. This is a very real problem, because the thousands of documents cannot be searched in a document management system and, if used in deposition or trial, cannot be authenticated because they lack Bates numbers. In addition, because the documents are in "native" format, the dates on the documents change when opened, creating additional authentication problems that would have been resolved if GraphOn had simply produced TIFF files in accordance with the Discovery Plan.

In recognition of these problems, GraphOn has begun to reproduce some documents with Bates numbers and TIFFs and has provided Juniper with a mapping document to compare the old production with the new production. Given the volume of documents at issue and the fact that GraphOn's latest production of technical documents was just received on Saturday, September 19, Juniper cannot represent to the Court which documents have been produced satisfactorily and which have not. However, Juniper can represent that it has been three months since GraphOn's technical document production was due, and still it is not complete.

Because a production in native format is not in compliance with the parties' agreement or the Court's Discovery Plan, Juniper respectfully requests that GraphOn's motion be denied. In addition, because of the extraordinary problems with GraphOn's production, Juniper respectfully requests that the Court impose the sanctions that Juniper originally requested in its Motion to Compel, filed nearly two months ago on July 24, 2009.

## BACKGROUND

At the start of this case, the parties entered into the Amended Joint Discovery Plan that specifies, *inter alia*, the manner in which the parties must produce documents.[1] The purpose of this mutually agreed upon format of production is to facilitate document review and use by both sides. Documents produced in compliance with the Amended Joint Discovery Plan are easily viewable and searchable and contain Bates numbers that facilitate identification and authentication of the documents as deposition and trial exhibits.

On May 18, 2009, Juniper issued its First Set of Document Requests to GraphOn. Among these 29 requests, Juniper sought technical documents from GraphOn, such as requests for documents that describe the functionality, operation, design, and development for each Accused Product.[2] On June 24, 2009, GraphOn produced documents in response to these document requests that included roughly 36 pages related to the technical operation of the accused products. Upon realizing that GraphOn produced so few purported technical documents, Juniper informed GraphOn that its production was deficient.[3] GraphOn replied that it possessed no additional technical documents to produce.[4]

On July 16, 2009, counsel for Juniper informed GraphOn that through Juniper's consultant's review of GraphOn's source code production, Juniper learned that additional GraphOn documents existing on the secured source code computers at Troutman Sanders in

---

[1] Docket No. 53, June 12, 2009 Amended Joint Discovery Plan at 5 ("The parties agree to the following with regard to the production of documents: 1. To the extent reasonably practicable, all documents should be produced as Group IV TIFF images at 300 dpi named the same as the Bates number. Color images should be provided in jpeg format. 2. A standard image load file indicating document boundaries and location of images should accompany the image . . . .").

[2] Ex. 1, Juniper's First Set of Document Requests to GraphOn at 7.

[3] Ex. 2, June 26, 2009 Letter from B. Sigler to M. Barnard.

[4] Ex. 3, July 1, 2009 Letter from M. Barnard to B. Sigler.

Washington, D.C. had not been produced.[5] On July 23, 2009, after GraphOn acknowledged the existence of these additional documents,[6] Juniper requested that GraphOn produce all documents from the source code repository that were responsive to Juniper's requests in the format required by the Amended Joint Discovery Plan.[7] Having received no confirmation from GraphOn that it would comply with this request, Juniper filed a motion to compel. Before the motion was heard, on August 6, 2009, GraphOn produced 231,000 pages of documents from the source code repository that it claimed were responsive to Juniper's requests.[8]

On August 17, 2009, Juniper informed GraphOn via email that over 2,500 documents in the source code repository production did not display an "embedded image" that existed in the native form of the same documents.[9] In other words, in each of these produced documents, an error message or a blank box appeared where a graphic, picture, or drawing appeared in the native form of the document as it is maintained at GraphOn and on the source code computers at Troutman Sanders. Juniper attached to the email an example of a document that illustrated the problem.[10] GraphOn denied that its production was deficient, but agreed to reproduce the documents.[11]

On August 19, 2009, GraphOn reproduced the documents, but the production contained the same formatting problems.[12] Juniper again informed GraphOn that the production was deficient and Juniper provided GraphOn with a spreadsheet identifying examples of the problem documents.[13] On August 24, 2009, the parties held a conference call, during which GraphOn's

---

[5] Ex. 4, July 16, 2009 Email from B. Sigler to M. Barnard.

[6] Ex. 5, July 21, 2009 Letter from M. Barnard to B. Sigler.

[7] *See* Ex. 6, July 24, 2009 Email from B. Sigler to M. Barnard.

[8] *See* Ex. 7, Aug. 6, 2009 Transmittal Sheet from Target Litigation Consulting, Inc.

[9] Ex. 8, Aug. 17, 2009 Email from B. Sigler to M. Barnard.

[10] *Id.*

[11] *See* GraphOn Mem., Ex. C, Decl. of Melissa P. Barnard ¶ 13.

[12] Ex. 9, Aug. 19, 2009 Letter from J. Burr to B. Sigler.

[13] Ex. 10, Aug. 20, 2009 Email from B. Sigler to M. Barnard.

counsel and outside technical consultant stated that GraphOn had produced the documents as the documents are maintained at GraphOn,[14] and that it was not possible to produce the documents to include the associated images.[15] This was untrue.

After this call, Juniper investigated whether GraphOn's explanations were accurate by having Dr. Shields, a professor of computer science and Juniper's technical consultant, again review the documents on the source code computers at Troutman Sanders. Through this review, Juniper discovered that GraphOn's explanations were inaccurate. Specifically, Juniper discovered that images not appearing in the documents produced to Juniper do appear in the same documents as they are stored on the source code computers at Troutman Sanders.[16] At the same time, Dr. Shields also discovered additional documents on the computers at Troutman Sanders that had yet to be produced to Juniper.[17] Juniper notified GraphOn of its findings via letter on August 28, 2009.[18]

On September 3, 2009, the parties held another teleconference on this issue. GraphOn for the first time (after over two weeks of correspondence) confirmed that the documents on the computers at Troutman Sanders indeed displayed images that did not appear in the same documents as GraphOn produced them to Juniper.[19] GraphOn also confirmed that additional responsive documents had been loaded onto the source code computers at Troutman Sanders, but not produced to Juniper.[20] As a result, GraphOn offered to produce the entire source code

---

[14] Ex. 11, Sigler Decl. ¶¶ 2-3.

[15] *Id.* ¶ 3. Contrary to GraphOn's assertions, neither Juniper's counsel nor its technical support employee stated on this call that the problems had been explained to their satisfaction. Rather, Juniper's counsel stated that he understood GraphOn's proffered explanation, and would get back to GraphOn after evaluating whether this explanation was accurate. *Id.* ¶ 4.

[16] Ex. 12, Aug. 28, 2009 Letter from B. Sigler to M. Barnard.

[17] *Id.*

[18] *Id.*

[19] *See* Ex. 13, Sept. 3, 2009 Letter from M. Barnard to B. Sigler.

[20] *See id.* GraphOn's placement of further documents on the source code computers without notifying Juniper is at odds with GraphOn's admission at the August 11 hearing that it had made

repository in native format.[21] Juniper agreed that this would provide a temporary solution, but, due to authentication problems, a production of the documents in the format required by the Amended Joint Discovery Plan (*i.e.*, a TIFF format production with Bates numbers) would be necessary at a later date.[22] Juniper agreed to accept the native format production contingent upon Juniper receiving (1) a deadline when GraphOn would make this production, and (2) a date when GraphOn would produce the same documents in the format required by the Amended Joint Discovery Plan.[23]

Later on September 3, 2009, GraphOn sent a letter to Juniper that misstated the parties' discussion on the call. In this letter, GraphOn asserted that Juniper had agreed to accept a native production of the documents only, and would forego seeking production of the documents in the format required by the Amended Joint Discovery Plan.[24] On September 4, 2009, Juniper notified GraphOn via email that GraphOn had misstated the discussion on the call, and again requested that GraphOn provide deadlines for production.[25]

Later on September 4, 2009, GraphOn responded by stating that its technical consultants could not produce the documents in the viewable and searchable form required by the Amended Joint Discovery Plan.[26] Rather than determine a solution to this problem, GraphOn suggested that Juniper should be responsible for converting the documents, and stated that GraphOn might be willing to reimburse Juniper for this expense, depending on the cost.[27] Juniper refused this

---

a mistake in placing the original source code repository documents on the same computers without notifying Juniper.

[21] Ex. 14, Sept. 4, 2009 Email from K. Jakel to M. Barnard.

[22] *Id.*

[23] *Id.*

[24] Ex. 13, Sept. 3, 2009 Letter from M. Barnard to B. Sigler.

[25] Ex. 14, Sept. 4, 2009 Email from K. Jakel to M. Barnard.

[26] Ex. 15, Sept. 4, 2009 Email from M. Barnard to K. Jakel.

[27] *Id.*

offer, as it would have shifted the discovery burden to Juniper to manage the production of documents representing over 90% of GraphOn's overall document production.[28]

Despite GraphOn's misstatements regarding the parties' discussions and efforts to shift its discovery burdens to Juniper, in a further attempt to resolve the issues without Court intervention, Juniper agreed to conduct another teleconference with technical personnel from both sides. During this call, on September 8, 2009, GraphOn stated that, when first creating the source code repository production, GraphOn made the intentional decision not to include certain graphical content.[29] In other words, GraphOn admitted that when it initially collected the data for production, inexplicably, it decided not to pull the images from the native files. In its memorandum, GraphOn asserts that "[g]raphics are not documents and so a decision was made at that time not to extract them."[30] This assertion is nonsensical. If a document has text and images, a party cannot decide to produce the text and not the images and still claim that the "document" was produced. However, even if there were a legitimate dispute regarding whether "graphics" are "documents," Juniper specifically defined "document" to include "all written or graphic matter" in its First Set of Document Requests to GraphOn Corporation.[31] As such, GraphOn's decision not to include the images in its production to Juniper is inexcusable. Not surprisingly, after counsel for GraphOn denied that images could be produced with the text, GraphOn's own technical consultant confirmed that producing at least the latest version of many of the technical documents, known as the "head revisions," with the associated images was possible and would not be "unreasonable."[32]

Ultimately, GraphOn agreed to provide, at the very least, a date certain when it would produce the head revisions of the documents with associated images in compliance with the

---

[28] Ex. 20, Sept. 4, 2009 Email from K. Jakel to M. Barnard.

[29] Ex. 16, Sept. 9, 2009 Email from K. Jakel to M. Barnard.

[30] *See* GraphOn Mem. at 4.

[31] Ex. 1, Juniper's First Set of Document Requests to GraphOn at 2.

[32] Ex. 16, Sept. 9, 2009 Email from K. Jakel to M. Barnard.

Amended Joint Discovery Plan and a "proposal" for addressing the remaining problems with the production. Juniper agreed that this was acceptable, but made clear that, given the delay, a "proposal" on how to fix the remainder of the production was not a solution.[33]

On September 9, 2009, GraphOn sent Juniper its proposal for remedying the longstanding problems with the source code repository production. Specifically, GraphOn proposed to (1) produce, in native format, a copy of the source code repository, (2) produce, in native format, the documents from the source code computers at Troutman Sanders identified by Juniper as not yet produced by GraphOn, and (3) produce, in the format required by the Amended Joint Discovery Plan, the latest versions of the source code repository documents with their embedded graphics (the head revisions), and the documents from the source code computers at Troutman Sanders identified by Juniper as not yet produced by GraphOn.[34]

On September 11, 2009, GraphOn filed its motion for a protective order. In its motion, GraphOn backed away from its proposal and sought an order allowing it to produce its source code repository documents and other documents in native format only.

On September 15, 2009, despite its motion, GraphOn agreed to produce the latest versions of the source code repository documents with their associated images (the head revisions), and the documents from the source code computers at Troutman Sanders identified by Juniper as not yet produced by GraphOn, in accordance with the Amended Joint Discovery Plan.[35] On September 17, 2009, GraphOn made this production.[36]

---

[33] *Id.*

[34] Ex. 17, Sept. 9, 2009 Letter from M. Barnard to K. Jakel.

[35] Ex. 18, Sept. 15, 2009 Email from M. Barnard to B. Sigler.

[36] *See* Ex. 19, Sept. 17, 2009 Transmittal Sheet from Target Litigation Consulting, Inc.

# ARGUMENT

1. **An Order Allowing GraphOn to Produce Documents in Native Format Is Not Appropriate Under the Circumstances**

GraphOn seeks via its motion an order allowing GraphOn to produce its source code repository documents and documents in other databases in native format.[37] Such a blanket order would not be appropriate because it contravenes the parties' agreement on the manner of document production subsequently ordered by the Court, shifts GraphOn's document production costs to Juniper (who has complied with the agreement as to its production), and means that approximately 90% of the documents GraphOn produced would not have Bates numbers and would not be able to be searched in any type of document management system. As the Court is undoubtedly aware, loading documents into a document management system so that they can be coded and searched is standard practice in all complex litigation today. Recognizing that its request for a native production is not reasonable, after filing its motion, GraphOn produced a number of the documents at issue in compliance with the Amended Joint Discovery Plan.

2. **Sanctions Are Appropriate Due to the Delay Caused by GraphOn's Mistakes and GraphOn's Conscious Decision Not to Produce Images with Its Documents**

GraphOn's technical document production in this case has been plagued by problems. First, GraphOn denied the existence of 99% of its technical documents.[38] Then GraphOn denied that it had failed to produce them because they were on the source code computers in a locked room at Troutman Sanders.[39] Then GraphOn produced the technical documents without the associated images.[40] Then GraphOn denied that the images were missing.[41] Then GraphOn produced the documents again without the associated images.[42] Then GraphOn admitted that the

---

[37] *See, e.g.*, GraphOn Mem. at 14.

[38] *See* Ex. 3, July 1, 2009 Letter from M. Barnard to B. Sigler.

[39] *See, e.g.*, GraphOn Mem. at 2.

[40] *See* Ex. 8, Aug. 17, 2009 Email from B. Sigler to M. Barnard.

[41] *See* GraphOn Mem., Ex. C, Decl. of Melissa P. Barnard ¶ 13.

[42] *See* Ex. 9, Aug. 19, 2009 Letter from J. Burr to B. Sigler.

images were missing, but denied that it could have produced or could produce them with images.[43]  Then GraphOn admitted that it could produce the documents with images, but denied that it could produce them with Bates numbers and associated TIFF files.[44]  Then GraphOn began producing documents with Bates numbers and associated TIFF files.[45]

Sanctions are appropriate because GraphOn's lack of diligence has materially delayed the case and impaired Juniper's preparation of infringement contentions, technical depositions, and expert reports.  Sanctions are also appropriate because all of these problems could have been avoided if GraphOn had exercised proper diligence in collecting and producing documents from the outset.  Finally, sanctions are appropriate because GraphOn unilaterally chose not to extract the image files when it produced its documents because it claimed that "graphics" were not "documents."  This decision is wrong under any standard, but is especially troubling given that Juniper explicitly asked for images in its document requests.

Despite the long and tortured history of GraphOn's production, Juniper has attempted to work with GraphOn throughout this process simply to obtain the documents Juniper needs to prepare its case.  It is with great displeasure that Juniper renews its request for sanctions, first made in its July 24, 2009 Motion to Compel.[46]  GraphOn's actions in frustrating Juniper's attempts to obtain a full production of GraphOn's technical documents render sanctions appropriate here.[47]

---

[43]  *See* Ex. 11, Sigler Decl. ¶ 3.

[44]  *See* Ex.15, Sept. 4, 2009 Email from M. Barnard to K. Jakel.

[45]  *See* Ex. 19, Sept. 17, 2009 Transmittal Sheet from Target Litigation Consulting, Inc.

[46] *See* Docket No. 70 at 7.

[47] *See* L.R. 37(G) ("The presentation to the Court of unnecessary discovery motions . . . as well as any unwarranted opposition to proper discovery proceedings, will subject such party to appropriate remedies and sanctions, including the imposition of costs and counsel fees.")

**CONCLUSION**

For all the reasons herein, Juniper respectfully asserts that GraphOn's motion for a protective order to produce documents in native format should be denied, and sanctions against GraphOn should be imposed.

Respectfully submitted,

Date: September 22, 2009

   /s/ Coke Morgan Stewart
Alan M. Fisch *(pro hac vice)*
Coke Morgan Stewart *(Va. Bar No. 41933)*
R. William Sigler *(Va. Bar No. 65940)*
Kevin W. Jakel *(pro hac vice)*
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Phone: 202-682-3500
Fax: 202-682-3580
Email: alan.fisch@kayescholer.com
Email: coke.stewart@kayescholer.com
Email: bill.sigler@kayescholer.com
Email: kevin.jakel@kayescholer.com

*Attorneys for Juniper Networks, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert A. Angle
Dabney J. Carr, IV
Troutman Sanders LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, Virginia 23219

Joseph M. Vanek
Jeffrey R. Moran
Vanek, Vickers & Masini, P.C.
111 S. Wacker Drive
Suite 4050
Chicago, Illinois 60606

Michael Dudley Rounds
Melissa Pagni Barnard
Eliza Virginia Bechtold
Watson Rounds
5371 Kietzke Lane
Reno, Nevada 89511

  /s/ Coke Morgan Stewart
Coke Morgan Stewart
Va. Bar. No. 41933
Attorney for Juniper Networks, Inc.
KAYE SCHOLER LLP
901 Fifteenth Street, NW
Washington, DC 20005
Phone: 202-682-3500
Fax: 202-682-3580
coke.stewart@kayescholer.com